70078. INTERNATIONAL INDEMNITY COMPANY
v. WHITE et al.
70079. GEORGIA CASUALTY & SURETY COMPANY
v. SOUTHWIRE COMPANY.
(331 SE2d 37)

BANKE, Chief Judge.

This discretionary appeal involves a dispute among two workers' compensation insurance carriers and a self-insured employer regarding which of them is liable for payment of death benefits to the dependents of a deceased employee.

The decedent was killed during the course of his employment as a wood cutter for Ralph White, d/b/a W & W Logging. Mr. White was a logging contractor who, at the time of the accident, worked primar-

ily for West Georgia Forest Products, a subsidiary of North Alabama Forest Products. Such contractors are known in the logging trade as "vendors," and they are paid on the basis of the weight of the wood they actually cut and deliver to the ultimate purchaser. While cutting timber for West Georgia, White's employees were covered by West Georgia's workers' compensation insurance policy, the amount of the premiums for such coverage being deducted by West Georgia from White's production payments. However, at the time the decedent was killed, White's crew was not cutting for West Georgia but for Southwire Company, which is a self-insurer with regard to workers' compensation coverage.

The reason White and his crew were cutting for Southwire rather than West Georgia at the time of the accident stemmed from the fact that the West Georgia tract on which they had been working had become too wet to permit trucks to be operated on it. During the resultant period of inactivity, White was contacted by a timber buyer for Southwire and asked to cut a tract on which that company owned the timber rights. White initially declined due to Southwire's unwillingness to provide his crew with workers' compensation coverage on terms acceptable to him. However, this problem was resolved when West Georgia, which had a valuable business relationship with Southwire, agreed to continue to provide White with workers' compensation coverage while he performed the Southwire job, in return for his continuing to make premium payments to West Georgia at the same cordage rate that would have applied had he been cutting for West Georgia. According to West Georgia's insurance agent, such arrangements were commonly utilized in the logging industry during "lag periods" in which a vendor who worked regularly for a particular company performed an isolated job for another company. White made the applicable insurance payments to West Georgia for his work on the Southwire tract, and West Georgia in turn continued to pay a premium for coverage of his crew to its regular workers' compensation carrier, appellant Georgia Casualty & Surety Company.

The accident which resulted in the decedent's death occurred on August 6, 1982. In late July of 1982, West Georgia's parent company, North Alabama Forest Products, was in the process of attempting to obtain workers' compensation coverage from a company other than Georgia Casualty & Surety Company, at a lower premium. A favorable quote was obtained from appellant International Indemnity Company, and that company issued a new policy covering West Georgia and its vendors, with an effective date of August 1. Prior to receiving the new policy, however, North Alabama learned that Georgia Casualty would charge a substantial penalty for the cancellation of its existing coverage; and, as a result, it notified International Indemnity that the deal was off. Although International Indemnity had received

no premium payment, it had already placed on file with the State Board of Workers' Compensation a "Form A Report of Coverage," specifying August 1 as the effective date of the coverage. It did not file a "Form B Report of Cancellation" until September 9, 1982, well after the decedent's death.

There is no question that the Georgia Casualty policy was still in effect on the date of the accident. The issues presented in this appeal are: (1) Whether the International Indemnity coverage was also in force on that date; (2) whether the decedent was covered under the terms of either of these policies, despite the fact that he was cutting timber for Southwire rather than for West Georgia when he was killed; and (3) whether Southwire had an obligation to provide the decedent with coverage either as an actual or a statutory employer. The ALJ, the full board, and the superior court all ruled that the two insurance carriers were equally liable for payment of the death benefits and that Southwire was not liable. We granted the two insurers' applications for discretionary appeal. *Held*:

1. The evidence supports the ALJ's implicit finding that White was doing business with Southwire as an independent contractor and that Southwire consequently was under no obligation as an actual employer to provide his crew with workers' compensation coverage. See generally *Hartford Acc. & Indem. Co. v. Parsley*, 113 Ga. App. 830 (1) (149 SE2d 848) (1966). Also, there being no evidence to indicate that Southwire was under a contractual obligation with anyone either to cut the timber on the tract of land in question or to provide any other service in connection with the cutting of the timber, there is no basis for a finding that Southwire was in a principal contractor-subcontractor relationship with White and thus no basis for holding that company liable as a "statutory employer" pursuant to OCGA § 34-9-8. "[S]ince the secondary liability imposed under this Code section is predicated upon the existence of the principal contractor-subcontractor relationship, this provision of the Compensation Act is not intended to cover all employers who let out work on contract but is limited to those who contract to perform certain work, such as the furnishing of goods and services, for another, and then sublet in whole or part such work." *Evans v. Hawkins*, 114 Ga. App. 120, 122 (150 SE2d 324) (1966). See also *American Mut. Liab. Ins. Co. v. Fuller*, 123 Ga. App. 585 (181 SE2d 876) (1971).

2. It is undisputed that prior to August 1, 1982, International Indemnity issued a valid and enforceable policy of workers' compensation insurance to North Alabama Forest Products, covering West Georgia Forest Products and its vendors. While International asserts that North Alabama cancelled this policy prior to its effective date, it is also undisputed both that the company filed a notice of coverage with the State Board of Workers' Compensation with respect to this

policy, specifying an effective date of August 1, 1982, and that it did not file a notice of cancellation with the board until well after the decedent's death. It follows that the International Indemnity coverage must be deemed to have been in force at the time of the accident, notwithstanding the fact that no contract of insurance may have been in existence under ordinary principles of contract. See *Lumbermens Mut. Cas. Co. v. Haynes*, 163 Ga. App. 288, 289 (293 SE2d 744) (1982).

3. Although the testimony on the issue was conflicting, there was some evidence to indicate that it was a common industry practice for "vendor coverage" to be extended to all regular vendors of a named insured, even those who might temporarily be cutting timber for another company during a "lag period" in the named insured's operations. Thus, the evidence supports the ALJ's finding that, at the time the accident occurred, White's employees were insured under the terms of both the Georgia Casualty policy and the International Indemnity policy. We reject the appellants' assertions that such an interpretation results in an unauthorized assignment of the policies by West Georgia to Southwire, which has been determined to have no liability under the circumstances.

4. For the above stated reasons, the superior court did not err in sustaining the board's ruling that both insurance carriers are equally liable for payment of this claim.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

### ON MOTION FOR REHEARING.

On motion for rehearing, both International Indemnity and Georgia Casualty assert that, contrary to this court's finding in Division 1 of the opinion, Southwire was in fact under a contractual obligation to cut the timber on the tract of land in question and may consequently be held liable as a statutory employer pursuant to OCGA § 34-9-8. However, the portions of the record relied upon in support of this assertion merely suggest that Southwire had purchased the timber rights on the tract of land in question from the property owner. It does not appear that Southwire was under any obligation to the owner to cut the timber or to perform any other service with respect to the land. Therefore, for the reasons previously stated, the board was not required to hold Southwire liable as a statutory employer.

DECIDED APRIL 18, 1985 —
REHEARING DENIED MAY 15, 1985 — 

*Charles E. Buker III*, for appellant (case no. 70078).

*G. Scott Hoffman, James T. McDonald, Jr., Douglas A. Bennett, Richard C. Sutton, John S. Husser,* for appellees.

*G. Scott Hoffman,* for appellant (case no. 70079).

*E. Lamar Gammage, Charles E. Buker III, Richard C. Sutton, Douglas A. Bennett, James T. McDonald, Jr.,* for appellee.